**PROPPANT SOLUTIONS, LLC, Appellant**

**v.**

**Emma DELGADO, Appellee**

**NO. 01–14–00800–CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued July 14, 2015

Rehearing Overruled October 28, 2015

Syd Phillips, Houston, TX, Bradley E. Featherston, The Mendel Law Firm, LP, Houston, TX, for Appellant.

Nelson Skyler, Tarush R. Anand, Razwana Fazil, Brown Sims, Houston, TX, for Appellee.

Panel consists of Justices Keyes, Higley, and Brown.

## OPINION

Harvey Brown, Justice

This is a personal jurisdiction case. Proppant Solutions, a California limited liability company, partnered with Christ-Del, a Tennessee corporation, to provide oilfield proppant to EOG, a Texas oil company. After Proppant Solutions and ChristDel completed the contract, Proppant Solutions filed this lawsuit claiming that ChristDel breached the partnership agreement, breached its fiduciary duty as a partner, and committed fraud. It also claimed that the three siblings who owned ChristDel, including Tennessee resident Emma Delgado, participated in Christ-Del's breach of fiduciary duty, made fraud-

ulent misrepresentations, and conspired to accomplish the fraud.

Emma filed a special appearance challenging the trial court's exercise of personal jurisdiction over her because she is a Tennessee resident, has no contacts with Texas outside of her business, and is not alleged in the petition to have committed a tort in Texas. Proppant Solutions responded that Texas has specific jurisdiction over Emma because of her involvement in the creation and performance of the contract between ChristDel and Proppant Solutions. The trial court granted Emma's special appearance, and Proppant Solutions timely appealed. We affirm.

## Background

This lawsuit arises from a contract between two businesses, Proppant Solutions and ChristDel. Proppant Solutions is a California limited liability company with its principal place of business in California. ChristDel is a Tennessee Corporation with its principal place of business in Tennessee.

Joseph Brown formed Proppant Solutions when, according to his affidavit, he "began looking into the business of selling oilfield proppant." Proppant Solutions obtained a contract to provide oilfield proppant[1] to EOG facilities in Pleasanton, Texas. It planned to buy the proppant from China but needed a way to ship it to the United States. According to its petition, Proppant Solutions' majority owner, Brown, discovered ChristDel online. On its website, ChristDel represented that it "had extensive experience as a logistics supplier of proppant." Brown contacted ChristDel's corporate officers, including Emma; they told Brown that ChristDel "had extensive experience ... moving large shipments of proppant from China to the U.S.A." They also represented that ChristDel "had fixed logistics contracts in place" for most of the shipping expenses and that with some variable expenses the total cost was "just over 15 cents per pound of proppant." Proppant Solutions offered—and ChristDel agreed—to fulfill the contract with EOG as a partnership, splitting the profits. As part of the partnership agreement, Proppant Solutions agreed to pay ChristDel the amount of the base costs, i.e., 15 cents per pound.

According to the petition, these representations were false. Proppant Solutions alleged that it would not have offered to complete the EOG contract with ChristDel as a partnership but for these representations. Brown relied on ChristDel because he "had no prior experience in buying, selling, or shipping proppant in the oilfield industry."

The petition alleged that ChristDel shipped millions of dollars of proppant from China to EOG in Texas over 18 months. ChristDel, acting through Emma, invoiced Proppant Solutions monthly. The invoices did not disclose ChristDel's costs, allegedly to "hide ChristDel's prior misrepresentations." Over the course of the contract, Proppant Solutions paid ChristDel over $50 million in expenses and $6 million in shared partnership profits. After the contract was completed, ChristDel refused to provide an accounting of its costs.

The petition identified four specific misrepresentations by Emma: (1) "Defendants had extensive experience in providing the logistics to move large shipments of proppant from China to Houston," (2) "Defendants had fixed logistics contracts

1. According to the petition, "[p]roppant is a solid material, typically treated sand or man-made ceramic materials, designed to keep an induced hydraulic fracture open, during or following a fracture treatment."

in place and ... the only variables were trucking fuel surcharges and demurrage," (3) "Defendants calculated their actual costs ... [were] just over $0.15/pound of proppant," and (4) "the parties would share the profits 60/40." Proppant Solutions further alleged that Emma and the other individual defendants used ChristDel "for the purpose of perpetrating" a fraud.

All defendants appeared except Emma. Emma filed a special appearance stating that she is a Tennessee resident with no ties to Texas outside of her business, she is a director of ChristDel, she had no conversations with Proppant Solutions regarding the matters in the lawsuit in her personal capacity, and all of her communications with Proppant Solutions occurred while she was in Tennessee. During her one trip to Texas in connection with the contract, she met with EOG, not Proppant Solutions.

In response to Emma's special appearance, Proppant Solutions filed an affidavit signed by its majority owner, Brown. In addition to supporting many of the factual allegations in the petition, Brown stated that after he discovered ChristDel's website he called and talked with Juan, Marcus, and Emma Delgado, who misrepresented ChristDel's experience. Contrary to these representations, ChristDel "had little or no experience in the logistics of moving proppant from China to the U.S.A." Therefore, ChristDel secretly hired a third party to perform many of its contractual obligations in return for a portion of its profits.

Brown claimed that he communicated with Emma "numerous times by email and telephone calls," although he never claimed that the communications between he and Emma were transmitted to or from Texas. With respect to the claim that ChristDel hid its costs, Brown averred that, because of her financial position with ChristDel,

Emma "had to be personally aware of ... this fact."

Proppant Solutions filed a second affidavit by its co-owner, Michael Hall. Hall, who had primary responsibility for the company's financial matters, stated that he worked primarily out of his home in Texas and dealt directly with Emma regarding "finance and billing." She communicated with Hall by email and telephone from her office in Tennessee. Emma sent him invoices for ChristDel's expenses. One expense item was a visit to Texas by Emma to meet with EOG officials and tour their Pleasanton facility. Finally, Hall stated that Emma also sent him documentation regarding the movement of proppant into the Port of Houston and then to Pleasanton.

Proppant Solutions filed a third affidavit signed by Ronald Cope, the principal shareholder of the Houston-based company that assisted ChristDel with shipping the proppant. Cope averred that he had estimated ChristDel's shipping cost at only 10 cents per pound, but ChristDel marked up the cost to over 15 cents per pound to increase its profits.

The trial court granted Emma's special appearance without issuing any findings of fact or conclusions of law. Proppant Solutions timely appealed.

### Standard of Review

■ "Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.,* 308 S.W.3d 395, 397 (Tex. 2010) (citing *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002)). When, as here, the trial court did not make findings of fact or conclusions of law, we infer all findings necessary to support the trial court's ruling. *Moki Mac River Ex-*

peditions v. Drugg, 221 S.W.3d 569, 574 (Tex.2007); Stull v. LaPlant, 411 S.W.3d 129, 133 (Tex.App.—Dallas 2013, no pet.).

### Jurisdictional Pleading Requirements

In a special appearance, the parties bear shifting burdens. "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." Kelly v. Gen. Interior Constr., Inc., 301 S.W.3d 653, 658 (Tex.2010). A plaintiff may carry its initial pleading burden in its petition or response to the defendant's special appearance. Stull, 411 S.W.3d at 134; Touradji v. Beach Capital P'ship, L.P., 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.). If, however, "the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." Kelly, 301 S.W.3d at 658–59.

"Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." Id. at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." Id. The defendant can negate jurisdiction on either a factual or legal basis. Id. at 659. A defendant negates jurisdiction on a factual basis by presenting evidence showing an absence of contacts with Texas, thus disproving the plaintiff's jurisdictional allegations. Stull, 411 S.W.3d at 134 (citing Kelly, 301 S.W.3d at 659). A defendant negates the legal basis for jurisdiction by showing that "if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts ... fall short of purposeful availment; ... the claims do not arise from the contacts; or ... traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." Kelly, 301 S.W.3d at 659.

If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show that the court has personal jurisdiction over the nonresident defendant. Stull, 411 S.W.3d at 134. A court should dismiss a lawsuit against a nonresident defendant if the exercise of personal jurisdiction lacks an adequate factual or legal basis. Id.

### Requirements for Personal Jurisdiction

"Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees." Spir Star AG v. Kimich, 310 S.W.3d 868, 872 (Tex.2010).

The Texas long-arm statute authorizes Texas courts to exercise personal jurisdiction over anyone "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (West 2015). "The broad language of the long-arm statute's 'doing business' requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow." Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.1991). Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations. Spir Star, 310 S.W.3d at 872.

Due process is satisfied "when two conditions are met: (1) the defendant has

established 'minimum contacts' with the forum state, and (2) the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 210 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). Depending upon the nature of a nonresident's contacts, personal jurisdiction may be general or specific. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex.2013).

### Specific Jurisdiction

■ Proppant Solutions asserts that Delgado is subject to specific personal jurisdiction. "Specific jurisdiction ... arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex.2009); *see also Moki Mac*, 221 S.W.3d at 576, 579 (specific jurisdiction requires satisfaction of "two co-equal components").

### A. Purposeful availment

■ The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex.2005). To determine whether a defendant has purposefully availed herself to the benefits of Texas law, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Id.* at 785. "The purposeful availment test should focus on 'the defendant's efforts to avail itself of the forum' and not 'the form of action chosen by the plaintiff.'" *Touradji*, 316 S.W.3d at 24 (quoting *Moki Mac*, 221 S.W.3d at 576); *see Michiana*, 168 S.W.3d at 789–90 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)) (for determining personal jurisdiction, "it is 'the defendant's conduct and connection with the forum' that are critical").

### B. Relatedness

■ The second prong, relatedness, analyzes the relationship between the defendant, the forum, and the litigation. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex.2007); *Moki Mac*, 221 S.W.3d at 576. Generally, courts analyze the relationship between jurisdictional contacts and each claim separately. *Moncrief*, 414 S.W.3d at 150. However, "a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts." *Id.* at 150–51.

### Pleadings and Evidence Before the Trial Court

Proppant Solutions asserts that Emma has sufficient minimum contacts with Texas because she: (1) "participated in negotiating the relationship between ChristDel and Proppant Solutions as they prepared to do business in Texas," (2) "personally participated in organizing the delivery and receipt [of the oilfield proppant] from China through the Port of Houston, and onto Pleasanton, Texas," (3) "sent and received e-mails to and from Texas billing for the logistic services and the expenses [of transporting the proppant]," and (4) "traveled to Texas to personally review the logistics operation."

### A. Emma's role in forming the relationship between ChristDel and Proppant Solutions is not personal availment

■ Emma's role in the formation of the relationship between ChristDel and

Proppant Solutions—her response to Proppant Solutions' inquiry allegedly misrepresenting ChristDel's capabilities and experience—was not a purposeful contact with Texas for three reasons. First, the choice of Texas as the delivery point was, for Emma, entirely fortuitous. Second, nonresident agents of nonresident businesses negotiated the contract outside of Texas. Third, Proppant Solutions never alleged that Emma actually participated in those negotiations.

### 1. Proppant Solutions' prior relationship with EOG is fortuitous

█ The mere fact that Emma's response to Proppant Solutions' inquiry led to a business agreement to fulfill Proppant Solutions' preexisting contract with EOG in Texas is not, by itself, enough to show purposeful availment. "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter.... By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" *Michiana*, 168 S.W.3d at 785.

In *Michiana*, a Texas plaintiff, Holten, contacted Michiana, a factory outlet for Coachmen RVs. Based on his conversations with the company, Holten purchased an RV. At Holten's request and expense, Michiana shipped the RV to Texas. *Id.* at 784. Holten subsequently sued Michiana in Texas for fraudulent misrepresentations made during Holten's telephone conversation with Michiana, for breach of contract, and for statutory claims. *Id.* at 781, 788–92.

The Court concluded that Michiana had no purposeful contacts with Texas. Michiana never solicited Holten's business. It never marketed itself in Texas nor made any attempt to enter the Texas RV market. Michiana's contact with Texas arose solely because a Texas resident decided to buy an RV from it. Had Holten not been a Texan, Michiana would have had no contact with Texas. *Id.* at 785–87. This contact with Texas was fortuitous because it arose from Holten's actions, not Michiana's. *See id.* at 786.

█ "[T]he mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market." *Moki Mac*, 221 S.W.3d at 577. In *Moki Mac*, Texas plaintiffs sued Moki Mac, a Utah river-rafting expedition company, in Texas for the wrongful death of their son during a rafting expedition in Arizona. The Court noted, "Unlike in *Michiana*, the evidence ... indicates that Moki Mac does intend to serve the Texas market." *Id.* Moki Mac regularly sold rafting trips to Texas residents. It sent targeted mailings to Texas residents, advertised in Texas newspapers and national publications with Texas subscribers, ran mass and targeted direct-marketing e-mail campaigns to solicit Texas clients, worked with Texas residents to solicit Texas business, and offered Texas residents various incentives to sign up for an expedition. *Id.* at 577–78. "Moki Mac's contacts with Texas did not result, as did the defendant's in *Michiana*, from the mere fortuity that the [plaintiffs] happened to reside here. Rather, the contacts it had with Texas resulted from additional conduct through which it aimed to get extensive business in or from this state." *Id.* at 578.

█ In a commercial dispute, the unilateral activities of others will not support specific jurisdiction over a defendant. *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 422 (Tex.App.—Houston [14th Dist.] 2014, pet. filed). In *Parex*, a Texas company, ERG, sought to buy shares of a

Columbian oil and gas interest from Nabors, a Bermudan company with a Houston office. *Id.* at 412. During these negotiations, Nabors solicited other bidders from the Royal Bank of Canada, which in turn solicited a bid from Parex Canada, a Canadian company. *Id.* at 413. Parex began communicating with Nabor's Houston office about the shares. *Id.* at 414. Shortly thereafter, ERG and Nabors entered into a contract to sell the shares; when that deal failed to close, Parex resubmitted its bid. *Id.*

ERG sued Nabors and Parex for specific performance of its contract and for tortious interference of contract. But the Fourteenth Court of Appeals found that Texas did not have special jurisdiction over Parex. "Parex Canada's initial contact with Nabors ... was solicited by Nabors and did not stem from Parex Canada's unsolicited decision to reach into Texas. Accordingly, Parex Canada's decision to engage in negotiations with a Texas company ... was fortuitous and based on Nabors's unilateral activities." *Id.* at 421. The court noted that even after Parex began actively competing with ERG, "Parex Canada's decision to reach into Texas via these contacts was certainly less purposeful than if Parex Canada was independently seeking out a Texas seller without initial prompting from Nabors." *Id.* at 422. "Moreover, the fact that Texas-based ERG was now part of the equation was based on Nabors's unilateral decision to contract with ERG, not any Parex Canada decision." *Id.* Accordingly, Parex's offer did "not support substantial Texas availment." *Id.*

This case is more like *Michiana* and *Parex* than *Moki Mac.* Here, there is no evidence that ChristDel or Emma have ever attempted to market themselves to

Texas or serve the Texas market. Emma, in particular, had no self-initiated contacts with Texas. Her only contacts with Texas were, much like in *Michiana* and *Parex,* because a customer with ties to Texas contacted her Tennessee employer. Importantly, Proppant Solutions actively recruited ChristDel and its personnel, not vice versa. Proppant Solutions agreed to provide oilfield proppant to EOG in Texas. Proppant Solutions then sought out ChristDel to help perform this task. Proppant Solutions offered to fulfill the contract[2] with ChristDel and split the profits.

▉▉▉▉▉ The dissent contends that, by relying on *Michiana* and *Moki Mac,* we "fail to recognize the distinction between establishing personal jurisdiction over a defendant in a stream of commerce case and establishing personal jurisdiction over a defendant in a fraud and fraudulent inducement case brought with respect to the negotiation and performance of a contract." But *Michiana* was a fraud case. *Michiana,* 168 S.W.3d at 788, 791. Personal jurisdiction is established by contacts, not culpability. *Id.* As *Parex* indicates, the underlying reasoning of *Michiana* and *Moki Mac*—that a defendant must purposefully reach out to Texas—is not limited to the typical stream of commerce context. Moreover, "jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business." *Kelly,* 301 S.W.3d at 660. It was Proppant Solutions, not Emma, who chose for the product to be delivered in Texas.

### 2. Nonresidents negotiated the contract outside of Texas

The contract was negotiated outside of Texas by nonresidents on behalf of two nonresident businesses. And Emma is not

---

**2.** The contract contains a Texas choice-of-law provision and a Houston forum-selection

clause—but Emma was not a party to the contract.

a party to the contract. Thus any connection to Texas from these negotiations or from the written contract alone would be "even less purposeful and more attenuated." *See Peredo v. M. Holland Co.*, 310 S.W.3d 468, 475 (Tex.App.—Houston [14th Dist.] 2010, no pet.) (third party's Texas contacts, which resulted from a contract between two nonresidents, did not satisfy minimum-contacts requirement).

### 3. Emma's involvement in the formation of the contract was limited

The alleged scope of Emma's involvement in the formation of the business relationship is small, and the extent of Emma's knowledge regarding Proppant Solutions' relationship to Texas when she spoke to Brown is unclear. The petition simply says: "ChristDel's owners, Juan, Marc, and Emma Delgado each later verified [statements on ChristDel's website] that ... ChristDel had extensive experience in providing logistics and moving large shipments of proppant." According to Brown's affidavit, this representation was made *before* Proppant Solutions proposed to fulfill the EOG contract as a partnership. There is no allegation and no evidence regarding whether Emma participated in negotiating the partnership agreement between Proppant Solutions and ChristDel or whether she knew of Proppant Solutions' connection to EOG in Texas when she spoke to Brown.

Thus, Emma did not purposefully direct her activities toward Texas by responding to Brown's inquiries regarding ChristDel's experience shipping proppant. Rather, Proppant Solutions unilaterally responded to representations by Emma and other ChristDel associates by seeking ChristDel's assistance to fulfill Proppant Solutions' preexisting obligations to EOG. From Emma's perspective, that Proppant Solutions had previously contracted with an EOG facility in Texas, instead of any other state, was merely fortuitous.

### B. That Emma communicated with an off-site employee working from a home office in Houston, instead of Proppant Solutions' California headquarters, was merely fortuitous

For similar reasons, Emma's communications with Michael Hall in Houston also do not constitute a purposeful contact with Texas.

According to his affidavit, Hall "was responsible for handling the financial aspects of the partnership agreement between Proppant Solutions and ChristDel." Emma "handled finance and billing for ChristDel." "Each month ... I received an invoice for the logistics of shipping the proppant from Emma. She also periodically sent me invoices for ChristDel's expenses ...."

It was Emma's responsibility to send these communications to her counterpart at Proppant Solutions—Michael Hall. These were business communications between a two businesses registered and headquartered outside of Texas. The record does not contain any evidence that Emma actively sought to work with an off-site employee in Texas instead of Proppant Solutions' California headquarters or that she sought any benefit of Texas law thereby. The record indicates that Hall worked from a home office in Houston. If Proppant Solutions had a functioning satellite office, the record reveals nothing about it. It does not reveal whether any other Proppant Solutions employees work in Texas or anywhere else outside of California. And it does not explain why Hall, a senior officer and co-owner of Proppant Solutions, worked at home in Houston.

Thus, the record suggests no reason why these calls and e-mails were sent to Houston other than Hall's decision to re-

ceive them there. But Hall's unilateral decision does not determine personal jurisdiction over Emma. *See Michiana,* 168 S.W.3d at 794 (RV dealership not subject to special jurisdiction in Texas because its "only contact with Texas was Holten's decision to place his order from there"). That Hall worked from his home office in Houston, not California, was merely fortuitous. *See Parex,* 427 S.W.3d at 427 ("Parex Canada's telephone, email, and virtual data room contacts with Nabors coupled with a finding that Parex Canada intended the contacts to harm ERG in Texas is not enough to establish purposeful availment.").

## C. The record does not establish Emma's participation in organizing the proppant delivery

█ Proppant Solutions also contends that specific jurisdiction is proper because Emma "personally participated in organizing the delivery and receipt [of the oilfield proppant] from China through the Port of Houston, and onto Pleasanton, Texas." The dissent agrees, contending that "[Emma] helped organize the receipt of the proppant in Houston, and she arranged for trucks to deliver it to Pleasanton. She ... arrang[ed] the logistics of the transportation and [dealt] with financing and billing."

But Proppant Solutions' petition alleged a much more limited role: "ChristDel, through its financial officer, Emma Delgado, sent eighteen monthly invoices to Michael Hall, Proppant Solutions' financial officer in Houston, Texas." Proppant Solutions' response to the special appearance explained: "She was the administrator of ChristDel and handled its finances and invoiced Proppant Solutions monthly for expenses and logistics.... She was responsible for the billing to Proppant Solu-

tions for all expenses and charges for logistics for the entire project ...."

The only allegation to the trial court suggesting that Emma controlled or orchestrated proppant delivery comes from Proppant Solutions' sur-reply, which alleged: "Emma was involved in setting up a logistics chain in Texas to import [proppant] for ultimate destination in Pleasanton, Texas." That allegation cites an e-mail from Emma to Proppant Solutions, which states, "Juan, Marc and I have delivered a logistics chain that is competitive." Assuming that we may consider an allegation raised for the first time in a sur-reply, this sheds almost no light on Emma's role, if any, in coordinating the movement of proppant. Absent more, this is not enough to establish purposeful availment.

## D. Emma's visit to Texas is not related to this litigation

█ Proppant Solutions relies on Emma's visit to EOG's Pleasanton, Texas facility to support the exercise of specific jurisdiction. But Proppant Solutions did not allege that Emma ever met with, communicated with, or committed any tort against Proppant Solutions while visiting Texas.

This contact cannot support special jurisdiction over Emma because no alleged liability arises from or is related to it. *See Kelly,* 301 S.W.3d at 659–60. In *Kelly,* an Arizona general contractor contracted to renovate a Houston hotel. *Id.* at 655. The general contractor hired several Texas subcontractors to perform the work. *Id.* After the contract was performed, the hotel owner asserted that the work was substandard and sued the general contractor and the subcontractors. *Id.* at 655–56. One of the Texas subcontractors filed third-party claims for breach of contract, violation of the Texas Trust Fund Act, and

fraud against the Arizona general contractor and its corporate officers. *Id.* at 656.

The third-party plaintiff asserted that the officers of the general contractor, despite operating from the Arizona office, had the following Texas contacts: they received the subcontractors' invoices from Texas, sent payments and change orders from Arizona to the subcontractors in Texas, and traveled to Texas several times during the renovation to oversee the subcontractors' work. *Id.* The Texas Supreme Court held that these activities did not allow Texas to exercise specific jurisdiction over the officers; the subcontractor's pleading "contain[ed] no allegations that the [o]fficers' wrongdoing occurred in Texas.... [I]t did not allege that any fraudulent acts occurred in Texas." *Id.* at 659–60. "Thus, although [the subcontractor] has alleged two claims of wrongdoing, it has not alleged that any acts giving rise to these two claims occurred in Texas." *Id.* at 660.

Nevertheless, Proppant Solutions cites *Carlile Bancshares, Inc. v. Armstrong,* No. 02–14–00014–CV, 2014 WL 3891658, at *1 (Tex.App.—Fort Worth Aug. 7, 2014, no pet.) (mem.op.), to assert that Emma's one visit to Texas is enough to create specific jurisdiction. In *Carlile,* a Colorado corporation sought out a business relationship with a Texas corporation; two officers from the Colorado corporation allegedly made fraudulent statements while meeting with the Texas corporation in Texas. *Id.* "These allegations met [the plaintiffs'] initial pleading burden by alleging acts or omissions in Texas ... and torts arising from such conduct." *Id.* at *12.

This case is more similar to *Kelly* than *Carlile.* Here, Proppant Solutions never alleged any tort arising from Emma's visit to EOG in Texas. It has not alleged any interaction with Emma during her trip. It has not asserted a claim based on any alleged misrepresentation made during or about the trip. Therefore, Emma's visit to the EOG facility is not substantially related to Proppant Solutions' claims against her.

### E. Proppant Solutions cannot rely on directed-at tort jurisdiction

The allegation that all of Emma's actions were part of a conspiracy intended to defraud Proppant Solutions in Texas does not aid its case. Only Emma's contacts, not the contacts of her co-defendants, affect our analysis. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)); *see also Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex.1995) (criticizing conspiracy as independent basis for jurisdiction). Further, the Texas Supreme Court has rejected directed-at tort jurisdiction. *Michiana,* 168 S.W.3d at 790; *see also Curocom Energy LLC v. Young–Sub Shim,* 416 S.W.3d 893, 897 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Directing a tort at the forum from afar does not constitute purposeful availment."); *Proskauer Rose LLP v. Pelican Trading, Inc.,* No. 14–08–00283–CV, 2009 WL 242993, at *4 (Tex.App.—Houston [14th Dist.] Feb. 3, 2009, no pet.) (mem. op.) (rejecting "directed-at-tort contentions" and holding trial court did not have specific personal jurisdiction over New York law firm whose attorney created opinion letter in New York and sent it to Texas). Rather, "jurisdiction turns ... on a defendant's contacts, [not] where the defendant 'directed a tort.'" *Michiana,* 168 S.W.3d at 790. Thus the issue is not whether there was a tortious conspiracy directed at Texas, but rather whether Emma has sufficient minimum contacts with Texas to support the exercise of specific personal jurisdiction over her. For

the reasons stated in this opinion, we conclude that she does not.

## Conclusion

Under the applicable standards of review and based on Proppant Solutions' allegations and evidence, we find no substantial connection between Emma's purposeful contacts with Texas and the operative facts of this litigation. *See Moki Mac,* 221 S.W.3d at 585–88 (finding no specific jurisdiction because substantial connection between defendant's purposeful contacts with Texas and operative facts of litigation did not exist); *BMC Software,* 83 S.W.3d at 797 (concluding no specific jurisdiction existed for contact that occurred outside of Texas). Accordingly, we overrule Proppant Solutions' sole issue on appeal and affirm the trial court's order granting Emma's special appearance.

Evelyn V. Keyes, Justice, dissenting

The majority affirms the dismissal of defendant Emma Delgado from this litigation for lack of personal jurisdiction. I respectfully dissent. In my view, the majority opinion misconstrues the relevant facts and law in dismissing from the litigation a defendant who plainly has minimum contacts with Texas; and in doing so, it denies constitutional fair play and substantial justice to the other defendants in this case and to Proppant Solutions.

Plaintiff Proppant Solutions, LLC, has alleged that Delgado, an owner, secretary, and Director for Administration/Finance of Defendant ChristDel Corporation, established minimum contacts with Texas that submitted her to its long-arm jurisdiction by her participation in the fraudulent inducement and fraudulent performance of the underlying agreement between ChristDel and Proppant Solutions. Under the agreement, ChristDel agreed to provide logistics for the receipt in China of Chinese-manufactured ceramic proppant used in oil field fracking, its delivery to the Port of Houston, its storage in Houston, its transportation across Texas, and its delivery to Proppant Solutions' customer, EOG Resources, Inc., in Pleasanton, Texas.

I agree with Proppant Solutions that Delgado is subject to personal jurisdiction in Texas—to which all other parties have submitted, including ChristDel—and I would so hold.

## Background Facts

It is undisputed that Delgado, a resident of Tennessee, was an owner, the Secretary, and the Director of Administration/Finance of defendant ChristDel Corporation, a Tennessee corporation, at the time the parties entered into and performed the underlying "Service Contract" (the "ChristDel/Proppant Solutions Contract") between ChristDel and Proppant Solutions, a California limited liability company. Proppant Solutions' allegations of fraudulent inducement and fraud against Delgado arise from her participation in the negotiation and performance of the ChristDel/Proppant Solutions Contract.

The ChristDel/Proppant Solutions Contract itself was the result of an agreement between Proppant Solutions and its customer, EOG Resources, Inc., a Texas corporation, obligating Proppant Solutions to ship proppant from China to Pleasanton, Texas, for delivery to EOG (the "Proppant Solutions/EOG Agreement"). Proppant Solutions entered into the ChristDel/Proppant Solutions Contract to enable it to perform its obligations under the Proppant Solutions/EOG Agreement. Also pursuant to the Proppant Solutions/EOG Agreement, Proppant Solutions entered into a contract with a Chinese company, Pacific Ark, Inc. ("PacArk"), to purchase proppant manufactured in the People's Republic of

China to be delivered to Qingdau, China for export to Texas in thirteen monthly shipments (the "Ceramic Proppant Contract").

The ChristDel/Proppant Solutions Contract contained a merger clause, which provided that "[t]his contract, including referenced exhibits, represents all of the terms and conditions agreed upon by the parties and represents the entire agreement between the parties." The referenced exhibits included the Proppant Solutions/EOG Agreement (Exhibit A) and the Ceramic Proppant Contract (Exhibit B). The "entire agreement" thus included all three contracts. Proppant Solutions filed a copy of the ChristDel/Proppant Solutions Contract referencing its exhibits as an exhibit in this special appearance proceeding.

Pursuant to the ChristDel/Proppant Solutions Contract, ChristDel agreed to accept delivery from PacArk of each monthly shipment of proppant in Qingdau, or another agreed-upon Chinese port of departure, for shipping to the Port of Houston and on to the end destination, Pleasanton, Texas, for delivery to a warehouse to be designated by EOG and provided by Proppant Solutions to ChristDel in advance of each monthly shipment. ChristDel agreed to arrange transportation of the proppant from the port of departure in China to Pleasanton on a schedule consistent with both the Proppant Solutions/EOG Agreement and the Ceramic Proppant Contract; to provide adequate vessel space to carry the proppant; to provide a commercial invoice and packing list for each monthly shipment; to serve as the importer of record; to manage customs clearance and inspections; to receive each monthly shipment at the Port Terminal in Houston, Texas; and to cause the proppant to be transported suitably to Pleasanton. ChristDel also agreed to warehouse the proppant in its Houston facility until the

proppant was delivered to Pleasanton in the event that EOG was unable or unwilling to accept the proppant within thirty days of its arrival in Houston.

ChristDel further committed to regularly exchange information with regard to shipping schedules, the status of the monthly shipments once they left China, and the anticipated delivery date in order "to comply with the requirements of the [Proppant Solutions/EOG] Agreement and [the Ceramic] Proppant Contract and not incur any unnecessary delays or expense"; "to issue a bill of lading for each monthly shipment and to fax or email it directly to EOG as required by the [Proppant Solutions/EOG] Agreement and copied to [Proppant Solutions]"; to direct the transportation of each monthly shipment of proppant; to make all logistical decisions applicable to each monthly shipment "in order to meet the requirements of [the ChristDel/Proppant Solutions] Contract, the [Proppant Solutions/EOG] Agreement, and the [Ceramic] Proppant Contract"; and to provide the necessary staff, employees, and contractors to fulfill the requirements of the ChristDel/Proppant Solutions Contract.

Proppant Solutions, in return, agreed to pay ChristDel a fixed rate of $1.51 for each pound of proppant shipped under the contract (the "base charge"); and ChristDel agreed to be responsible for paying all normal and customary charges associated with shipping, importing, and transporting the monthly shipments of proppant. Proppant Solutions also agreed to be responsible for certain other charges as specified in the ChristDel/Proppant Solutions Contract.

According to the pleadings and exhibits in this special appearance proceeding, many tons of proppant were received by ChristDel at the Port of Houston in monthly shipments delivered over a period

of eighteen months pursuant to the Christ-Del/Proppant Solutions Contract, at a total cost of $59 million. The proppant was stored by ChristDel in its warehouse in Houston as necessary to fulfill the Proppant Solutions/EOG Agreement. The proppant was moved through Texas under arrangements made by Delgado and others at ChristDel. And ChristDel arranged its delivery to EOG in Pleasanton, Texas.

From ChristDel's headquarters in Tennessee, Delgado helped organize the receipt of the proppant in Houston and arranged for trucks to deliver it to Pleasanton. She personally visited Texas to review the operations with Proppant Solutions and EOG. She also exchanged numerous emails and telephone calls with Proppant Solutions' 40%-owner and representative in Houston, Michael Hall—who was also Proppant Solutions' chief financial officer, just as Delgado was ChristDel's Director for Administration and Finance—and others in Texas to arrange the logistics and finances for the storage and transportation of the proppant. Delgado also sent the allegedly fraudulent invoices to Hall in Texas, and these invoices are the primary basis for Proppant Solutions' fraud claims.

As support for its pleadings in this special appearance proceeding filed by Delgado, Proppant Solutions filed an affidavit by Hall, who had primary responsibility for the company's financial matters. In his affidavit, Hall averred that he worked primarily out of his home in Texas and dealt directly with Delgado regarding "finance and billing" by email and telephone from her office in Tennessee to his home in Texas, where she also sent him invoices for ChristDel's expenses. One of these expense items invoiced Proppant Solutions for a visit to Texas made by Delgado to meet with EOG officials and tour their Pleasanton, Texas facility. Hall further stated that Delgado sent him documentation regarding the movement of proppant into the Port of Houston and on to Pleasanton.

Proppant Solutions also filed an affidavit signed by Ronald Cope, the principal shareholder of the Houston-based company that assisted ChristDel with shipping the proppant. Cope averred that he had estimated ChristDel's shipping cost at only ten cents per pound, but ChristDel marked up the cost to over fifteen cents per pound to increase its profits. In short, Cope provided a material part of the factual basis for concluding that the invoices sent by Delgado to Hall in Texas contained fraudulent misrepresentations of the shipping costs and that the performance of the contract was the execution of a scheme to defraud Proppant Solutions to the personal enrichment of ChristDel and its owners and officers, including Delgado.

Delgado, however, contends, and the majority agrees, that under the law and the facts of this case, she lacks the minimum contacts with Texas necessary to subject her to personal jurisdiction in Texas under the Texas long-arm statute on the claims of fraudulent inducement and fraud brought against her by Proppant Solutions for her actions in negotiating and performing the ChristDel/Proppant Solutions Contract. I disagree. I would hold that the Texas courts have jurisdiction over Delgado for purposes of this litigation, and I would therefore reverse the order of dismissal and remand the case for trial on the merits against all defendants, including Delgado.

## Law of Personal Jurisdiction

### A. The Scope of the Texas Long–Arm Statute and the Requirements of Federal and State Due Process

"Texas courts have personal jurisdiction over a nonresident defendant when (1) the

Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees." *Spir Star AG v. Kimich,* 310 S.W.3d 868, 872 (Tex.2010).

In relevant part, the Texas long-arm statute provides that a nonresident defendant submits himself to the jurisdiction of this state by doing business in this state if the nonresident, *inter alia,* "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2015).

In turn, federal due process requires two things. "First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there." *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 446 (Tex.App.—Houston [1st Dist.] 2005, no pet.) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). "Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id.* at 447 (citing *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84).

*1. The first prong of due process: minimum contacts*

The first prong of due process, the minimum contacts element, is divided into specific and general jurisdiction. *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 230 (Tex.1991). Proppant Solutions asserts that Delgado is subject to specific personal jurisdiction.

"Specific jurisdiction . . . arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco Operating Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 338 (Tex.2009); *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 576, 579 (Tex.2007) (stating that specific jurisdiction requires satisfaction of "two co-equal components": privilege of conducting activities in Texas and substantial connection between contacts and operative facts of litigation); *see Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005) (stating that for jurisdictional due process, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).

In establishing purposeful availment, only the defendant's contacts with the forum state count; "the acts relied on must be 'purposeful' rather than fortuitous," and the "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Michiana,* 168 S.W.3d at 785. "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Id.* (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)).

To impose personal jurisdiction, it is not necessary that the defendant's conduct actually have occurred in Texas so long as her acts were purposefully directed towards the state. *See Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79

L.Ed.2d 804 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996); *SITQ E.U., Inc. v. Reata Rests., Inc.* 111 S.W.3d 638, 646 (Tex.App.—Fort Worth 2003, pet. denied). Indeed, "a defendant should reasonably anticipate being hauled into court where the effects of [her] conduct have been intentionally caused through that purposeful direction of activity toward the forum state, even if the defendant never physically enters the state." *SITQ E.U.*, 111 S.W.3d at 646. The courts consider the quality and nature of the defendant's contacts, not their number or the ubiquity of their means. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). "[T]he question ... is not whether certain of [the defendant's] contacts with Texas, standing alone, are sufficient to subject [her] to personal jurisdiction here. Instead, it is whether there is a substantial connection between all of [her] Texas contacts, considered collectively, and the operative facts of the litigation." *Dodd v. Savino*, 426 S.W.3d 275, 286 (Tex.App.—Houston [14th Dist.] 2014, no pet.).

*2. The second prong of due process: fair play and substantial justice*

To satisfy the second prong of federal due process, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *See Guardian Royal Exch.*, 815 S.W.2d at 226. In making this determination, a court must consider five factors: (1) the burden on the defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental, substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113–16, 107 S.Ct.

1026, 1033–34, 94 L.Ed.2d 92 (1987); *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185; *Guardian Royal Exch.*, 815 S.W.2d at 226. The defendant bears the burden of presenting a "compelling case" that exercising jurisdiction over her would not be fair and just. *See Spir Star AG*, 310 S.W.3d at 878 (quoting *Guardian Royal Exch.*, 815 S.W.2d at 231). Only rarely will the Texas courts' exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch.*, 815 S.W.2d at 231.

*3. Burden of proof of personal jurisdiction*

To establish personal jurisdiction, a plaintiff initially need only plead allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex. 2010). In a tort case, such as one alleging fraudulent inducement and fraud, the plaintiff must plead that the defendant committed a tortious act, in whole or in part, in Texas. *Id.* at 659. The plaintiff's original pleadings, as well as its response to the defendant's special appearance, can be considered in determining whether the plaintiff satisfied its burden. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n. 7 (Tex.App.—Houston [1st Dist.] 2004, pet. denied).

Because ultimate liability in tort is not a jurisdictional fact and the merits of the cause are not at issue, the jurisdictional inquiry focuses on whether plaintiff sufficiently established facts suggesting that the defendant should have anticipated being haled into a Texas court based on her actions. *See Ennis v. Loiseau*, 164 S.W.3d 698, 708–09 (Tex.App.—Austin 2005, no pet.); *Wright*, 137 S.W.3d at 246, 251. "Hence, if the evidence suggests that the

nonresident [defendant] officer participated in tortious or fraudulent activities, which were directed at Texas and for which [she] may be held personally liable, then there is a sufficient basis to assert specific jurisdiction over [her]." *Ennis*, 164 S.W.3d at 709 (citing *Wright*, 137 S.W.3d at 251). If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant assumes the burden of negating all bases of jurisdiction in the allegations. *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 574.

### B. Delgado's Alleged Torts of Fraudulent Inducement and Fraud

Proppant Solutions has sued Delgado personally for fraudulent inducement and fraud in the performance of the Christ-Del/Proppant Solutions Contract, which occurred in material part in Texas. It does not allege that the contract was negotiated or signed in Texas. However, Proppant Solutions alleges that Delgado personally made material misrepresentations about ChristDel's experience and contacts procuring proppant in China to induce Proppant Solutions to sign the Christ-Del/Proppant Solutions Contract. Proppant Solutions also alleges that Delgado personally oversaw part of the contract's performance in Texas and that she directed telephone calls, emails, and fraudulently inflated invoices into Texas in furtherance of the performance of the fraudulently induced contract.

Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 799 (Tex.App.—Houston [1st Dist.] 2006, no pet.). Thus, with a fraudulent inducement claim, the elements of fraud must be established as they relate

to an agreement between the parties. *Haase*, 62 S.W.3d at 798–99. The operative facts of a fraudulent inducement claim are thus those that establish the elements of fraud with relation to the agreement between the parties.

The elements of fraud are: (1) that the speaker made a material misrepresentation (2) that he knew was false when he made it or that he made recklessly without any knowledge of its truth and as a positive assertion (3) with the intent that the other party act upon it and (4) that the other party acted in reliance on the misrepresentation and (5) suffered injury thereby. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex.2011). Fraud may also occur when (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex.2001); *JSC Neftegas–Impex v. Citibank, N.A.*, 365 S.W.3d 387, 408 (Tex.App.—Houston [1st Dist.] 2011, pet. denied). A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy*, 341 S.W.3d at 337.

Silence also may be equivalent to a false representation when the particular circumstances impose a duty on the party to speak and the party nevertheless deliberately remains silent. *Bradford*, 48 S.W.3d at 755; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex.1995). Whether

a duty to disclose exists is a question of law. *Bradford*, 48 S.W.3d at 755.

Texas law provides that a corporate employee is personally liable for her own fraudulent or tortious acts which she directs or participates in during her employment. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex.2002); *Leyendecker & Assocs., Inc., v. Wechter*, 683 S.W.2d 369, 375 (Tex.1984); *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex.App.—Dallas 2007, no pet.).

### Analysis of Delgado's Texas Contacts Based on Pleadings of Fraudulent Inducement and Fraudulent Performance of Contract

I would hold that Proppant Solutions has established that Delgado had minimum contacts with Texas in that she purposefully availed herself of the forum for the purpose of conducting activities within it and that Proppant Solutions' allegations of fraud and fraudulent inducement against her arose out of her contacts with Texas. Therefore, Delgado is subject to personal jurisdiction in Texas for doing business in Texas within the scope of Texas's long-arm statute by committing a tort in whole or in part in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. I would also hold that the Texas courts' exercise of jurisdiction over Delgado in the underlying proceedings comports with fair play and substantial justice.

### A. *Delgado's Minimum Contacts with Texas*

To establish Delgado's minimum contacts with Texas, Proppant Solutions was required to show that she purposefully availed herself of the forum by conducting activities in Texas and that there was a substantial connection between her contacts with Texas and the operative facts of the underlying litigation. *See Moki Mac,*

221 S.W.3d at 576, 579 (specific jurisdiction requires satisfaction of "two co-equal components": privilege of conducting activities in Texas and substantial connection between contacts and operative facts of litigation). In the context of its allegations of fraudulent inducement and fraud, that means that Proppant Solutions had to adduce pleadings and evidence suggesting that Delgado participated in tortious or fraudulent activities that were directed at Texas and for which she may be held personally liable. *See Ennis,* 164 S.W.3d at 709; *Wright,* 137 S.W.3d at 251. I would hold that Proppant Solutions fully carried its burden.

The undisputed facts in the record show that Delgado, as a director and the financial officer of ChristDel, participated in negotiating the ChristDel/Proppant Solutions Contract, which was to be performed in material part in Texas, where the oil field proppant was to be received, stored, transported, and delivered to EOG by ChristDel. Proppant Solutions has alleged that, during the course of these negotiations, Delgado, along with the other owners and principals of ChristDel, made material misrepresentations about ChristDel's experience and contacts in China, which they all knew were false when made, with the intent that Proppant Solutions act upon them and enter into the contract with ChristDel. Proppant Solutions has further alleged that it acted in reliance on the misrepresentations and that it suffered millions of dollars in injuries due to the misrepresentations of Delgado and others. The jurisdictional evidence also suggests that Delgado was personally involved in performing the contract, including traveling to Texas to meet with EOG representatives; directing multiple emails and phone calls to Texas for the purpose of arranging transport and financing for receiving, storing, and delivering the prop-

pant in Texas; and sending allegedly fraudulent invoices to Hall at his home office in Texas.

I would hold that Proppant Solutions alleged facts sufficient to establish that Delgado, whether by making affirmative misrepresentations or by remaining silent when she had a duty to speak, participated in the fraudulent inducement of a contract to be performed in material part in Texas and directed fraudulent invoices to Texas. It alleged that each corporate defendant, including Delgado, concealed or failed to disclose material facts within their knowledge about the experience and contacts of ChristDel with proppant suppliers in China and the cost of the proppant, knowing that Proppant Solutions was ignorant of these facts and did not have an equal opportunity to discover the truth, and intending to induce Proppant Solutions to sign the contract by concealing or failing to disclose these facts, to the injury of Proppant Solutions. *See Bradford*, 48 S.W.3d at 754–55; *JSC Neftegas–Impex*, 365 S.W.3d at 408. In my view, these particular circumstances imposed a duty on all of the ChristDel parties to disclose facts and, therefore, the silence of any ChristDel party, including Delgado, during these negotiations in which material misrepresentations within their knowledge were made was equivalent to making the false representations. *See Bradford*, 48 S.W.3d at 755; *SmithKline Beecham Corp.*, 903 S.W.2d at 353.

There is no question that the act of negotiating a contract to be performed in large part in Texas was a purposeful act by which all of the participants, including Delgado, a principal of ChristDel, sought profits on the contract, which could be obtained only by ChristDel and its principals' creating ongoing logistics operations with Proppant Solutions and EOG in Texas. *See Michiana*, 168 S.W.3d at 786

(stating that in establishing purposeful availment, only defendant's contacts with forum state count; "the acts relied on must be 'purposeful' rather than fortuitous"; and "defendant must seek some benefit, advantage, or profit by 'availing' [herself] of the jurisdiction").

As stated by the United States Supreme Court in *Travelers Health* and the Texas Supreme Court in *Michiana*, "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Id.* (quoting *Travelers Health*, 339 U.S. at 647, 70 S.Ct. at 929). It was not necessary that Delgado's participation in the contract negotiations actually have occurred in Texas so long as the negotiations were purposefully directed to inducing a contract to be performed in large part in Texas. *See SITQ E.U.*, 111 S.W.3d at 646 ("[A] defendant should reasonably anticipate being haled into court where the effects of [her] conduct have been intentionally caused through that purposeful direction of activity toward the forum state, even if the defendant never physically enters the state.").

In addition, the record plainly shows that, once the ChristDel/Proppant Solutions Contract was made, Delgado was a principal figure in its performance in Texas. In accordance with the terms of the ChristDel/Proppant Solutions Contract, and in exchange for sums agreed on in that contract, ChristDel arranged for the receipt of many tons of ceramic proppant in China and for its transportation to the Port of Houston in monthly shipments delivered over a period of eighteen months. ChristDel stored the proppant in its warehouse in Houston as necessary to meet the purposes of the Proppant Solutions/EOG Agreement. ChristDel arranged for the

transportation of the proppant through Texas under arrangements made by Proppant Solutions and itself with EOG, and it delivered the proppant to EOG at its ultimate destination in Pleasanton, Texas.

Delgado helped organize the receipt of the proppant in Houston, and she arranged for trucks to deliver it to Pleasanton. She exchanged numerous emails and telephone calls with Hall, Proppant Solutions' co-owner and representative in Houston, arranging the logistics of the transportation and dealing with financing and billing. She personally visited Texas to review the operations with Proppant Solutions and EOG, and she sent the allegedly fraudulent invoices to Hall in Houston for payment.

I can only conclude, on the basis of these facts, that Delgado's contacts with Texas in connection with the negotiation and performance of the ChristDel/Proppant Solutions Contract are substantially connected to the operative facts of the litigation and show that she clearly purposefully availed herself of the privilege and benefits of conducting business in Texas under a contract from which she personally profited. There is a substantial connection between Delgado's Texas contacts, considered collectively, and the operative facts of the litigation. *See Dodd,* 426 S.W.3d at 286; *SITQ E.U.,* 111 S.W.3d at 646. Proppant Solutions presented facts suggesting that Delgado directed fraudulent activities—for which she can be held personally liable—at Texas, such that she should have anticipated being haled into court here based on her actions. *See Ennis,* 164 S.W.3d at 708–09; *Wright,* 137 S.W.3d at 248, 251; *see also Wechter,* 683 S.W.2d at 375 (holding that corporate employee or officer is personally liable for her own fraudulent or tortious acts that she directs or participates in during her employment).

I would hold that Proppant Solutions has borne its burden of establishing the minimum contacts prong of the Texas courts' personal jurisdiction over Delgado with respect to the activities made the subject of this litigation.

## B. Fair Play and Substantial Justice

There is also no question, to my mind, that subjecting Delgado to personal jurisdiction in this case comports with fair play and substantial justice, whereas allowing her—alone among the principals of ChristDel—to escape trial and potential liability for her own alleged acts of fraud or fraudulent inducement shown to have a substantial connection with the operative facts of this case, as the majority opinion does, denies fair play and substantial justice not only to Proppant Solutions but to all the other parties. *See Guardian Royal Exch.,* 815 S.W.2d at 231 (listing five factors in establishing fair play and substantial justice: (1) burden on defendants; (2) interests of forum state in adjudicating dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in obtaining most efficient resolution of controversies; and (5) shared interest of states in furthering fundamental, substantive social policies).

First, the financial burden on Delgado of litigating this dispute in Texas—where litigation is already underway and all other defendants have submitted to jurisdiction and appeared and answered, where the contract was principally performed, and where over $59 million in business was done, including $6.5 million in profits generated from Proppant Solutions—is not excessive compared to the total burden on the parties imposed by the costs of the litigation. By contrast, allowing Delgado alone to avoid trial and potential liability increases the burden on all the other parties. It means either that the case must

be tried elsewhere, where all defendants are subject to personal jurisdiction, or that Delgado alone must be allowed to escape trial and potential liability for any torts she may have committed or participated in committing during the inducement and performance of the ChristDel/Proppant Solutions Contract, or that Proppant Solutions must bring suit against Delgado alone in Tennessee, thus creating piecemeal litigation and increasing the burden of costs and potential liability on all other defendants.

Second, Texas has a vested interest in adjudicating this dispute. The Christ-Del/Proppant Solutions Contract expressly provides that the contract shall be "construed and interpreted in accordance with laws of the State of Texas," and any action "brought hereunder" is subject to venue in Harris County, Texas. Houston is the venue in which Proppant Solutions is afforded the most convenient and effective relief. It has an office here and Hall, a Texas resident, is a 40% owner of it. Likewise, Juan Delgado, one of the other defendants, is a Texas resident.

Third, ChristDel, of which Emma Delgado is a corporate director and owner, has already filed an answer in this action, as has Marc Delgado, another defendant and ChristDel co-owner and director, who is also a Tennessee resident.

Fourth, under these circumstances, the most efficient resolution of the controversy demands that Emma Delgado be subjected to personal jurisdiction in Texas, to which her co-defendants have voluntarily submitted.

Finally, resolution of the entire controversy in this Texas litigation comports with the shared interest of both Tennessee and Texas in furthering fundamental, substantive social policies, and no one has presented any argument or evidence to show that it does not.

For all the foregoing reasons, I would hold that Emma Delgado is subject to specific personal jurisdiction in this litigation arising out of her alleged commission of the torts of fraudulent inducement and fraud in the performance of the Christ-Del/Proppant Solutions Contract and that subjecting her to the jurisdiction of the Texas courts fully satisfies the constitutional requirements of fair play and substantial justice. I would, therefore, deny her special appearance and remand this case for trial on the merits.

### Response to the Majority's Jurisdictional Analysis

In my view, both the majority's reasoning and its holding that Delgado is not subject to personal jurisdiction in Texas on the facts of this case are deeply flawed.

First, the majority fails to recognize the distinction between establishing personal jurisdiction over a defendant in a stream of commerce case and establishing personal jurisdiction over a defendant in a fraud and fraudulent inducement case brought with respect to the negotiation and performance of a contract between and among sophisticated businesses in furtherance of interrelated agreements among them. Consequently, it incorrectly relies on *Michiana*, a general "stream of commerce" case, and *Moki Mac* as controlling authority. Neither is relevant to the determination of the Texas courts' jurisdiction over Delgado in this litigation.

Second, the majority maintains that "Emma's participation in contract negotiations was not a purposeful contact with Texas." This claim is unsustainable under the facts of this case for the reasons set forth above.

Regarding the majority's reliance on stream of commerce cases, the majority

claims that "a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" Op. at 538 (citing *Michiana,* 168 S.W.3d at 785). The majority recites the facts in *Michiana*—a phone call placed by the Texas plaintiff to Michiana, a factory outlet for Coachmen RVs that had placed its RVs in the stream of commerce resulting in the plaintiff's purchase of an RV, and Michiana's shipment of the RV to Texas, which the Texas Supreme Court held insufficient to establish personal jurisdiction over Michiana. The majority then takes these entirely disparate facts as the authority for its *own* finding, on the facts of this wholly dissimilar case, that Delgado had no purposeful contacts with Texas. Op. at 538 (citing *Michiana,* 168 S.W.3d at 781, 784, 788–92). There is simply no relationship between the operative jurisdictional facts in *Michiana* and the operative jurisdictional facts in this case.

Despite the majority's recitations, neither the ChristDel/Proppant Solutions Contract nor the Proppant Solutions/EOG Agreement that it incorporated reflected the "mere sale of a product to a Texas resident." *See* Op. at 538 (citing *Moki Mac,* 221 S.W.3d at 577). Proppant Solutions' claims against Delgado are not mere contract claims based on a product Christ-Del launched into the stream of commerce and Proppant Solutions happened to purchase in Texas, as in *Michiana.* Proppant Solutions' claims against Delgado are are tort claims based on Delgado's own tortious participation in negotiating and performing a set of interrelated contracts among sophisticated business entities. Proppant Solutions has argued—and produced jurisdictional evidence—that Delgado participated in the torts of fraudulent inducement and fraud in the performance of a contract she and the other principals of ChristDel negotiated with Proppant So-

lutions and performed in principal part in Texas.

According to the record, Delgado's substantial personal involvement and conduct in both the inducement and the performance of the ChristDel/Proppant Solutions Contract were directed specifically at Texas. She allegedly made fraudulent misrepresentations with the intent of inducing Proppant Solutions into the contract, which was to be performed in large part in Texas, and she visited this state in furtherance of the performance of that contract. She made multiple phone calls and sent multiple emails to this state to perform ChristDel's contractual obligations. She arranged to receive the proppant at the Port of Houston, to store it in Houston, to transport it across the state of Texas, and to deliver it to EOG, a Texas business. Finally, she sent allegedly fraudulently inflated invoices for ChristDel's performance of its contractual duties to Hall in Texas. The majority's reliance on stream of commerce cases like *Michiana* and *Moki Mac* can thus only be construed as entirely misplaced in light of these facts.

The majority's reliance on the wrong law also leads it to misconstrue the significance of Delgado's allegedly tortious actions in and directed to Texas to the proof of Proppant Solutions' claims. The majority concludes that ChristDel and its principals did not intend to direct their activities toward Texas. But this conclusion is completely at odds with the facts in the case. This is not a case in which Proppant Solutions complains that ChristDel placed advertisements in the stream of commerce directed to the general public and Proppant Solutions answered the ad and bought ChristDel's product. Yet the majority focuses entirely on ChristDel's marketing of its services to the public to the *exclusion* of any reference to the acts—either of contract negotiation or of con-

tract performance—that Proppant Solutions alleges were committed by Delgado, were tortious, and were directed at Texas. Thus it concludes, incorrectly, that the reasoning of steam-of-commerce cases, such as *Michiana* and *Moki Mac*, is applicable to the determination of the Texas courts' jurisdiction over Delgado in this case. Op. at 539–40. Consequently, it omits as irrelevant to its determination virtually all of the acts Proppant Solutions alleges Delgado committed in connection with the alleged fraud that were specifically directed to Texas. And, in so doing, it disregards Delgado's participation in the operative facts of the litigation. Or it mentions these facts only to state that they do *not* show what they *do* show when construed in terms of what Proppant Solutions was required to prove to establish personal jurisdiction over Delgado under the facts of this case.

Dismissing Delgado's acts from consideration on the ground that she never attempted to market herself to Texas and had "no self-initiated contacts with Texas," the majority ignores Delgado's exchange of emails and phone calls to Texas to discuss financial and logistical matters, her arrangement of transportation, her review of the Texas facilities, her mailing of allegedly fraudulent invoices to Hall in Texas, and her receipt of millions of dollars in payments from Proppant Solutions. It then opines that Delgado's "only contacts with Texas were, much like in *Michiana* . . ., because a customer with ties to Texas contacted her Tennessee employer," and "Proppant Solutions actively recruited ChristDel and its personnel, not vice versa." Op. at 539.

The majority also makes the factually incorrect claim that Delgado's coordination of the movement of proppant from the port of Houston to Pleasanton is insufficient "to establish purposeful availment" of the fo-

rum, Texas. Op. at 541. And it makes the factually and legally incorrect claim that Delgado's visit to EOG's Pleasanton facility is not substantially related Proppant Solutions's claims against Delgado and "cannot support special jurisdiction over Emma because no alleged liability arises from or is related to it." Op. at 541.

The majority cites *Kelly* for support of its opinion. However, *Kelly* is a factually inapplicable personal jurisdiction case in which a Texas subcontractor on a hotel renovation project filed claims for third-party breach of contract, violations of the Texas Trust Fund Act, and fraud against the Arizona general contractor that had hired it. *Id.* The supreme court held that personal jurisdiction was lacking because, although the subcontractor had alleged two claims of wrongdoing, it had not alleged that any acts giving rise to those two claims occurred in Texas. *Id.* Here, by contrast, Proppant Solutions has alleged, in support of its allegations of fraudulent inducement and fraud, that Delgado directed numerous allegedly tortious activities to Texas, including making fraudulent misrepresentations to induce Proppant Solutions to enter a contract that was to be performed in large part in Texas and performing the obligations of that contract, including sending the allegedly fraudulent invoices to Texas.

### Conclusion

Because I believe the majority opinion fails to recognize the operative facts and controlling law of this personal jurisdiction case and misconstrues or misapplies the law governing personal jurisdiction, including constitutional standards of fair play and substantial justice, I must dissent. I would reverse the judgment of the trial court finding that the Texas courts lack jurisdiction over Delgado in this litigation,

and I would remand the case for trial against all defendants on the merits.

Keyes, J., dissenting.